IN THE DISTRICT COURT FOR THE EASTERN DISCTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RITE OF PASSAGE, INC., <br><br> Plaintiff. <br><br> v <br><br> MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES (MDHHS), <br><br> Defendant. | Case No. <br> District Judge <br> Magistrate Judge |
| CARA M. SWINDLEHURST (P79953) <br> A. SOLOMON LUWOYE (P85660) <br> Gordon Rees Scully Mansukhani LLP <br> *Attorneys for Plaintiff* <br> 37000 Woodward Ave, Ste. 225 <br> Bloomfield Hills, MI 48304 <br> (313) 756-6401 <br> cswindlehurst@grsm.com <br> sluwoye@grsm.com <br> tdavis@grsm.com (Assistant) | |

## VERIFIED COMPLAINT

NOW COMES Plaintiff, Rite of Passage, Inc. ("ROP" or "Plaintiff"), by and through its attorneys, GORDON REES SCULLY MANSUKHANI, LLP, and hereby states as follows for its Verified Complaint against Defendant Michigan Department of Health and Human Services ("MDHHS" or "Defendant")

1

1. This is a civil action for money damages, liquidates damages, costs, attorneys' fees, and other relief against Defendant. Plaintiff asserts claims of breach of contract, fraudulent inducement, unjust enrichment, violation of 17 U.S.C. §101 *et. seq.*, violation of 42 U.S.C. § 1981, and violation of public policy.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is a foreign corporation with its principal place of business located at 2560 Business Parkway, Suite A, Minden, Nevada 89423.

3. Upon information and belief, Defendant is a state governmental department with its registered address as 235 South Grand Avenue, Lansing, MI 48909.

4. Subject matter jurisdiction is vested in this Court with regard to MDHHS, pursuant to 28 U.S.C. § 1338. Further, this Court has original jurisdiction over the claims under 17 U.S.C. §101 *et. seq.*, (hereinafter the "Copyright Act") and 42 U.S.C. § 1981, pursuant to 28 U.S.C §1331, and supplemental jurisdiction of the claims pertaining to breach of contract, fraudulent inducement, unjust enrichment, and violation of public policy, pursuant to 28 U.S.C §1367.

5. Venue in this Court is proper pursuant to 28 U.S.C §1391(b)(2).

6. Pursuant to the terms of the Contract between the Parties, the Parties agreed that all claims arising out of the Contract are governed by Michigan law.

## FACTUAL ALLEGATIONS

7. ROP is a national organization committed to providing youth centered programs and opportunities for the communities it serves by providing services that empower youths to become advocates in their own lives.

8. The St. Clair Youth Treatment Center ("SCYTC") is a licensed Evidenced-Based Mental Health (EBMH) program operating within the 140 bed Macomb County Juvenile Justice Center. It was established in 2023 through a five-year contract between ROP and MDHHS to address Michigan's juvenile justice bed shortage and launch an EBMH program for system-involved youth both from the community and across the state.

9. On October 16, 2023, ROP and MDHHS entered a Contract for a 20-bed program, with an initial term expiring September 30, 2024. The Contract included an explicit 4-year option term, ending on September 30, 2028.

10. Subsequent to executing the Contract, on November 13, 2023, the first youth was admitted into the program, and the facility subsequently was at or near capacity after the initial ramp-up.

11. On July 10, 2024, MDHHS requested that ROP request licensing for opening additional beds.

12. On September 24, 2024, MDHHS requested a meeting with ROP to discuss the aforementioned expansion for additional beds. The initial meetings took

place on October 3, 2024, and ROP then agreed to expand its capacity at SCYTC starting February 1, 2025, for an additional 15-20 youths.

13. In December of 2023, MDHHS and ROP agreed in writing to extend the contract through the next option year, ending September 30, 2025.

14. Based on MDHHS's request and ROP's justified reliance, ROP submitted all finalized documentation to the State licensing department on November 16, 2024, in order to revise its license application and modify the program's statement to reflect an expanded population.

15. Then, on November 18, 2024, ROP's representatives met with MDHHS Director Elizabeth Hertel and Jean Ingersol regarding the expansion.

16. Subsequently, from December 6, 2024, through early January 2025, potential sites were toured by ROP and MDHHS.

17. On January 10, 2025, ROP began the review process for expansion with the Michigan Department of Licensing and Regulatory Affairs ("LARA") at the request of MDHHS.

18. On February 3, 2025, it was determined there would be a 3-phase plan to properly effectuate expansion at the SCYTC, including transitioning the Shawano youths to SCYTC, co-locating 40 beds at SCYTC, and establishing a permanent location for SCYTC.

19. On February 7, 2025, MDHHS expressed support of the 3-phase plan.

20. Unsurprisingly, ROP relied upon MDHHS's approval and support, and consequently began hiring staff to operate the expanded facility.

21. In fact, there was a press release on January 24, 2025, announcing the expansion plans to add additional beds and create more than 70 new jobs.

22. On February 24, 2025, a meeting was held between ROP and MDHHS to discuss the next steps for extending the Contract.

23. On February 26, 2025, the Bureau of Fire Services provided a final inspection of SCYTC and approved the expansion.

24. Subsequently, on February 28, 2025, just two days after the aforementioned final inspection and approved expansion, Demetrius Starling from MDHHS stated that the Shawano youth would now be transferred to a different agency, "Spectrum Human Services," and MDHHS would not place additional youth at the SCYTC, despite MDHHS's request for ROP to obtain an expansion, and ROP receiving approval to expand.

25. On March 10, 2025, Mr. Starling on behalf of MDHHS provided notice that ROP needed to exit the facility by May 5, 2025.

26. On March 18, 2025, MDHHS sent a formal notice and Letter of Termination, terminating the Contract. On the same day, ROP sent a letter to Director Hertel outlining the John R. Street location costs. ROP further responded

5

on April 2, 2025, requesting authorization to remain at the Macomb facility. **(Exhibit A - April 2, 2025 Letter).**

27. Following this, ROP also made attempts to find a resolution amicably, which was met with retaliatory conduct by MDHHS.

28. ROP has and continues to suffer significant damages because of MDHHS's actions.

29. Accordingly, ROP sent a formal Notice of Intent to Sue to MDHHS in accordance with MCL 600.6431 on December 19, 2025, via certified mail, and also filed a Notice of Intent with the Clerk of the Court of Claims on January 21, 2026. **(Exhibit B, Notice of Intent**).

30. Although MDHHS has framed the contract termination as a termination for convenience, the facts strongly reveal that its action is a pretext to avoiding ongoing contractual obligations and to take advantage of the good faith efforts, resources, and services put forth by ROP.

31. ROP consistently met or exceeded performance standards under the agreement, with no documented deficiencies warranting such a sudden and disruptive termination.

32. It is clear that the termination was done in bad faith where MDHHS recently requested ROP obtain licensing to increase the facility's capacity, and immediately thereafter sought to terminate the contract and operate the facility itself

despite ROP's efforts and success at its own expense in obtaining the additional licensing.

33. MDHHS's actions led to the loss of jobs to 55 ROP staff members after all transition services were provided. These staff were hired and trained to provide services based on MDHHS's request to house additional students and obtain licensing for the same. Thus, the staff members were hired in reliance on MDHHS's request to obtain additional licensing.

34. Additionally, MDHHS continues to damage ROP by violating federal copyright law. More specifically, the MDHHS's Michigan Youth Treatment Center Policy and Procedure Manual created June 20, 2025—after MDHHS took over control of SCYTC—improperly copied and/or is substantially derived from the SCYTC materials created by ROP.

35. In fact, the majority of MDHHS's June 20, 2025, manual comprises substantial portions of ROP's original work of authorship, which is protected by federal copyright law.

36. Indeed, the June 20, 2025 version includes verbatim phrasing that is unique to ROP, and is not standard industry language. Notably, the Michigan Youth Treatment Center manual includes the phrase "St. Clair Youth Tre," a truncated and misspelled reference that illustrates the direct copying of ROP's St. Clair Youth Treatment Center materials.

7

37. Moreover, MDHHS has also engaged in retaliatory and bad faith dealings through its self-serving recommendation to revoke ROP's license at SCYTC.

38. On or about November 25, 2025, ROP lawfully sent a Freedom of Information Act ("FOIA") request to investigate and substantiate the unethical concerns regarding the Contract termination after MDHHS's induced ROP to act.

39. After ROP sent the FOIA request, despite an August 2025 on-site inspection and October 2025 special investigation report, on December 3, 2025, MDHHS sent a letter with recommendation to revoke ROP's license. There is no doubt that MDHHS's retaliatory recommendation is at least pretextually in response to ROP's FOIA request, which violates public policy.

40. ROP is a corporation with employees that are predominantly people of color/racial minorities. Similarly, the youth of SCYTC were predominantly people of color/racial minorities. MDHHS's decision to terminate the Contract has had and continues to have a significant negative impact on these individuals that will consequently subject MDHHS to claims pertaining to a violation of 42 U.S.C §1981.

## **COUNT I – BREACH OF CONTRACT**

41. ROP incorporates by reference the preceding allegations as if fully restated herein.

42. "Michigan law requires a party claiming a breach of contract to prove the existence and terms of a contract, that the defendant breached its terms, and that the breach caused damages to the plaintiff." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017).

43. On October 16, 2023, ROP and MDHHS entered into a valid and enforceable Contract for a 20-bed program with an initial term expiring September 30, 2024, and an explicit 4-year option term. ROP fully performed its material obligations under the Contract and consistently met or exceeded performance standards, with no documented deficiencies warranting termination.

44. MDHHS materially breached the Contract by issuing a March 18, 2025 Letter of Termination and effectuating termination without valid cause and in contravention of the parties' course of dealing and the Contract's terms, including the agreed option term.

45. MDHHS further breached the Contract by ceasing placements of youths at SCYTC and diverting them to another provider after having induced ROP and approved expansion that it requested, thereby depriving ROP of the benefit of the bargain.

46. As a direct and proximate result of MDHHS's breach, ROP has suffered and continues to suffer damages, including lost revenues, sunk and reliance costs associated with the expansion, staffing costs, and other consequential damages.

47. ROP seeks money damages, liquidated damages where applicable, costs, and attorneys' fees to the extent permitted by law and the Contract.

## COUNT II – FRAUDULENT INDUCEMENT

48. ROP incorporates by reference the preceding allegations as if fully restated herein.

49. MDHHS fraudulently induced ROP when it informed and requested that ROP proceed with expansion plans to accommodate additional youths.

50. ROP consequently and justifiably relied on MDHHS's representations by expending considerable time and resources, preparing licensing applications, submitting finalized licensing documentation, engaging with LARA, completing inspections, and committing resources to expansion.

51. Shortly after final inspection and expansion approval, MDHHS announced it would divert youths to "Spectrum Human Services," cease additional placements at SCYTC, and then terminated the Contract.

52. Although MDHHS framed the contract termination as a termination for convenience, the facts reveal that MDHHS's action was a pretext to avoid ongoing contractual obligations and to take advantage of the good faith efforts, resources, and services put forth by ROP.

53. Stated succinctly, MDHHS made material misrepresentations beyond the existing contract which ROP reasonably relied upon.

54. MDHHS's actions and fraudulent inducement were willful, malicious, and/or in reckless disregard of ROP's rights and foreseeably caused ROP substantial damages, including costs of expansion, staffing, lost business opportunities, and reputational harm.

55. ROP consequently seeks damages proximately caused by MDHHS's fraudulent inducement.

## COUNT III – UNJUST ENRICHMENT

56. ROP incorporates by reference the preceding allegations as if fully restated herein.

57. "The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Inv, Inc.*, 302 Mich App 59, 64; 836 NW2d 898 (2013)

58. MDHHS has been unjustly enriched by obtaining the benefits of ROP's expertise, expansion efforts, licensing groundwork, and program materials beyond the contractual requirements without providing full compensation and performing its contractual obligations.

59. Equity requires restitution of the value conferred by ROP and unfairly retained by MDHHS.

60. ROP seeks restitution in an amount to be determined at trial.

## COUNT IV – COPYRIGHT INFRINGEMENT (17 U.S.C. §101 *et. seq.*)

61. ROP incorporates by reference the preceding allegations as if fully restated herein.

62. ROP authored and created its exclusive Policy and Procedure materials for SCYTC that constitute protectable works under federal copyright law. There is no doubt that ROP maintains exclusive ownership of all rights, title, and interest in the copyrights of its Policy and Procedure materials for SCYTC.

63. Subsequently, MDHHS created the Michigan Youth Treatment Center Policy and Procedure Manual on or about June 20, 2025, after taking control of SCYTC, which copied and/or is substantially derived from ROP's SCYTC materials. Notably, the Michigan Youth Treatment Center Policy and Procedure Manual includes the phrase "St. Clair Youth Tre," a truncated and misspelled reference evidencing direct copying.

64. MDHHS's reproduction, preparation of derivative works, and distribution of material copied from ROP's works occurred without authorization and infringed on ROP's exclusive rights.

65. As a result of MDHHS's infringement, ROP has sustained damages and is entitled to all remedies available under the Copyright Act, including actual damages and profits or statutory damages, and injunctive relief, together with costs and attorneys' fees to the extent permitted by law.

## COUNT V – VIOLATION OF 42 U.S.C. § 1981

66. ROP incorporates by reference the preceding allegations as if fully restated herein.

67. Under 42 U.S.C. § 1981, all persons within the United States are guaranteed the same right to make and enforce contracts regardless of race. This protection extends to the making, performance, modification, and termination of contracts, as well as to the enjoyment of all benefits, privileges, terms, and conditions thereof.

68. At all relevant times, ROP employed a workforce at SCYTC that was predominantly people of color/racial minorities.

69. At all relevant times, the youth of SCYTC were predominantly people of color/racial minorities.

70. MDHHS was aware that SCYTC's staff was predominantly people of color/racial minorities, including through its on-site involvement, oversight activities, communications with ROP leadership, and direct interaction with SCYTC personnel.

71. Despite ROP's consistent compliance with contractual obligations, successful program performance, and MDHHS's repeated inducement of ROP to expand staffing and capacity, MDHHS abruptly ceased placements, diverted youth to another provider, and terminated the Contract in a manner that foreseeably and

intentionally resulted in the displacement and termination of ROP's workforce at SCYTC, which was predominantly people of color/racial minorities.

72. Upon information and belief, MDHHS's actions were not neutral or inadvertent, but were undertaken with knowledge of, and deliberate indifference to, the racially disparate consequences to SCYTC staff, and in a manner that intentionally interfered with the existing and prospective contractual employment relationships between ROP and its employees who are people of color/racial minorities.

73. MDHHS's conduct constituted intentional interference with contractual relationships protected by § 1981, including but not limited to ROP's contractual right to perform and benefit from its agreement with MDHHS free from racial discrimination and retaliation based on ROP's association with employees who are people of color/racial minorities.

74. As a direct and proximate result of MDHHS's racially discriminatory conduct and interference, ROP suffered substantial damages, including loss of its contractual relationship, disruption of operations, loss of goodwill, and economic harm arising from the forced termination of employment contracts affecting approximately 55 staff members.

75. MDHHS's actions were willful, malicious, and/or undertaken with reckless disregard for ROP's federally protected rights under 42 U.S.C. § 1981.

76. Furthermore, MDHHS's actions denied the predominantly minority staff and youth the full and equal benefit of the contractual relationship and interfered with the making, performance, modification, and enjoyment of the Contract's benefits, privileges, terms, and conditions, in violation of 42 U.S.C. § 1981.

77. ROP is consequently entitled to relief permitted under 42 U.S.C. § 1981, including compensatory damages, punitive damages, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT VI – VIOLATION OF PUBLIC POLICY

78. ROP incorporates by reference the preceding allegations as if fully restated herein.

79. MDHHS's aforementioned actions, including but not limited to breaching its contractual obligations, fraudulently inducing ROP, infringing on ROP's copyrights, terminating a contract that jeopardizes the well-being of staff and youth, retaliatory actions, efforts to revoke the license, etc., all violate established public policy and constitute an abuse of discretion.

80. As a direct and proximate result of MDHHS's violation of public policy, ROP suffered significant damages.

81. Accordingly, ROP seeks all available relief for MDHHS's violation of public policy, including damages and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Rite of Passage, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Michigan Department of Health and Human Services and award the following relief:

a) Compensatory damages in an amount to be determined at trial;

b) Liquidated and/or reliance damages where applicable;

c) Damages for unjust enrichment;

d) Injunctive relief and damages under 17 U.S.C. § 501 et seq., including attorneys' fees to the extent permitted;

e) Damages for violation of 42 U.S.C. § 1981;

f) Damages for violation of public policy, including but not limited to retaliation;

g) Attorneys' fees; and

h) Costs, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI

*/s/ A. Solomon Luwoye*
Cara M. Swindlehurst (P79953)
A. Solomon Luwoye (P85660)
Attorneys for Plaintiff
37000 Woodward Ave., Suite 225
Bloomfield Hills, MI 48304

Dated: February 4, 2026

### PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause, by USDC Eastern District E-Filing, on February 4, 2026.
*/s/ Tameica R. Davis*
**TAMEICA R. DAVIS**

## **VERIFICATION**

I, <u>Jerry Alan Crandall</u>, declare as follows:

1. I am the <u>National Compliance Director</u> of Rite of Passage, Inc, the Plaintiff in the foregoing Verified Complaint.

2. I have personal knowledge of Rite of Passage, Inc. and its activities, including those set forth in the foregoing Verified Complaint, and if called upon to testify, I would competently testify as to the matters stated herein.

3. I declare under the penalty of perjury that the factual statements in this Verified Complaint are true and correct.

Dated: February 3, 2026

Signature:

Jerry Alan Crandall

IN THE DISTRICT COURT FOR THE EASTERN DISCTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RITE OF PASSAGE, INC., <br><br> Plaintiff. <br><br> v <br><br> MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES (MDHHS), <br><br> Defendant. | Case No. <br> District Judge <br> Magistrate Judge |
| CARA M. SWINDLEHURST (P79953) <br> A. SOLOMON LUWOYE (P85660) <br> Gordon Rees Scully Mansukhani LLP <br> *Attorneys for Plaintiff* <br> 37000 Woodward Ave, Ste. 225 <br> Bloomfield Hills, MI 48304 <br> (313) 756-6401 <br> cswindlehurst@grsm.com <br> sluwoye@grsm.com <br> tdavis@grsm.com (Assistant) | |

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff Rite of Passage, Inc., by and through its attorneys, GORDON REES SCULLY MANSUKHANI, LLP, and hereby demands a jury trial in the above-captioned matter for all issues triable.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI

*/s/ A. Solomon Luwoye*
Cara M. Swindlehurst (P79953)
A. Solomon Luwoye (P85660)
Attorneys for Plaintiff
37000 Woodward Ave., Suite 225
Dated: February 4, 2026      Bloomfield Hills, MI 48304

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause, by USDC Eastern District E-Filing, on February 4, 2026.
*/s/ Tameica R. Davis*
**TAMEICA R. DAVIS**

20